IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

Association for Supervision )
and                        )
Curriculum Development, Inc., )
                           )
                           )
         Plaintiff,        )
                           )
v.                         )     CIVIL ACTION NO. 1:10cv74
                           )
International Council for   )
Education Reform and       )
Development, Inc., et al.,  )
                           )
         Defendants.       )

## MEMORANDUM ORDER

THIS MATTER is before the Court on Plaintiff Association

for Supervision and Curriculum Development, Inc.'s ("ASCD")

Motion for Summary Judgment against Defendants International

Council for Education Reform and Development, Inc. ("ICERD") and

Dr. Joseph Ghaly (collectively, "Counterclaimants" or

"Defendants"). (Dkt. No. 118.) This case concerns various

torts and breaches of contract in the creation and maintenance

of foreign schools.

There are ten issues before the Court. The first issue is

whether the Court should grant summary judgment for Count I of

ASCD's Complaint when there is no issue of material fact as to

whether (1) a promissory note existed between ASCD and

Defendants, (2) Defendants failed to pay the note, and (3)

Plaintiff was monetarily damaged as a result of the lack of payment. The Court grants summary judgment for Count I of Plaintiff's Complaint for ASCD's Count I because (1) there was a valid promissory note, (2) Defendants breached the note by failing to pay it, and (3) Plaintiff was damaged by Defendants' action.

The second issue before the Court is whether the Court should grant summary judgment for Count II of Plaintiff's Complaint when Defendants dispute Plaintiff's invoice for the Istanbul Project ("IP"). The Court grants Plaintiff's motion for summary judgment for ASCD's Count II because (1) a valid contract existed, (2) Defendants failed to produce any evidence that the invoice charges are incorrect, or that Defendants prepaid any meals, travel expenses, or hotel rooms, and (3) Plaintiff was damaged by Defendant's failure to pay.

The third issue before the Court is whether the Court should grant summary judgment for Count III of Plaintiff's Complaint when Defendants dispute Plaintiff's invoice for the United Arab Emirates Project ("UAEP"). The Court grants Plaintiff's motion for summary judgment for ASCD's Count III because (1) a valid contract existed, (2) Defendants failed to produce any evidence that the invoice charges are incorrect, or that Defendants prepaid any meals, travel expenses, or hotel

rooms, and (3) Plaintiff was damaged by Defendants' failure to pay.

The fourth issue is whether the Court should grant summary judgment against Counterclaimants' Count II defamation claim when the allegedly actionable statements were fact-based. The Court grants summary judgment against Counterclaimants' Count II defamation claim because the allegedly defamatory statements are not false.

The fifth issue is whether the Court should grant summary judgment against Counterclaimants' Count I tortious interference with contract claim when (1) Counterclaimants cannot establish an independent tort, and (2) the alleged interference occurred during the course of dealing between two interested parties. The Court grants summary judgment against Counterclaimants' Count I tortious interference with contract claim because Counterclaimants cannot establish the independent tort required to interfere with the contract.

The sixth issue is whether the Court should grant summary judgment against Counterclaimants' Count VI tortious interference with contract claim when Counterclaimants have not provided any evidence of the actual lost contracts. The Court grants summary judgment because Counterclaimants cannot prove that they were damaged by the allegedly tortious action.

The seventh issue is whether the Court should grant summary judgment against Counterclaimants' Count III breach of contract claim when the parties agreed to a clause limiting damages from lost profits and revenues in the original affiliation agreement. The Court grants summary judgment against Counterclaimants' Count III because the parties' express agreement prohibits recovery of damages for lost profits.

The eighth issue is whether the Court should grant summary judgment against Counterclaimants' Count IV breach of contract claim when the parties agreed to a clause limiting damages from lost profits and revenues in the original affiliation agreement. The Court grants summary judgment against Counterclaimants' Count IV because the parties' express agreement prohibits recovery of damages for lost profits.

The ninth issue is whether the Court should grant summary judgment against the Counterclaimants' Count V breach of the non-solicitation provision of the affiliation agreement when ASCD already had a pre-existing relationship with the party at issue. The Court grants summary judgment against Counterclaimants' Count V because ASCD already had a pre-existing relationship.

The tenth issue is whether the Court should grant summary judgment against Counterclaimants' Count VII civil conspiracy claim when counterclaimants have failed to provide evidence

establishing an agreement to tortiously interfere with ICERD's contracts. The Court grants summary judgment against Counterclaimants' Count VII civil conspiracy claim because Counterclaimants failed to establish an agreement between Zayed University and ASCD to tortiously interfere with Counterclaimants' contracts.

In short, the Court grants summary judgment in favor of Plaintiff for Counts I, II, and III of Plaintiff's Complaint, and for each of Defendants' Counterclaims. Each issue will be discussed below.

## I. BACKGROUND

This case is about the souring of a relationship between two non-profit organizations and the resultant fallout.

ICERD is a non-profit organization dedicated to educational policy. Dr. Ghaly serves as ICERD's executive director and CEO. On July 11, 2005, Dr. Ghaly contacted ASCD to request an affiliation status with ASCD. On November 13, 2007, ICERD and ASCD executed an Affiliate Agreement, making ICERD an ASCD affiliate and licensing ICERD to (1) use the trademark name "ASCD Middle East" ("ASCDME"), (2) market and sell ASCD Products, (3) sell other Permitted Products, and (4) conduct Permitted Activities in support of ICERD's efforts to develop initiatives in the Middle East. As part of the agreement, ASCD

loaned ICERD $100,000 to use as working capital for which ICERD executed a promissory note.

ASCD and ICERD came to an oral agreement for ASCD to provide ICERD with products and services in connection with the Istanbul Project and United Arab Emirates Project. ICERD disputes the value of the project; as the agreements were oral, there is little to memorialize them.

On January 21, 2009, ASCD invoiced ICERD for $208,458.70 for its consulting services for both UAEP and IP. In March 2009, ICERD paid ASCD $100,000 toward the outstanding balance of $208,457.70. On April 21, 2009, ICERD paid ASCD an additional $49,956.

On May 18, 2009, ASCD provided Dr. Ghaly with 180 days notice of its intent to terminate the Affiliation Agreement for convenience, effective November 15, 2009. ASCD alerted the United Arab Emirates Ministry of Education ("MoE") of the relationship change through three separate e-mails.

On January 27, 2010, ASCD filed a Complaint in the United States District Court for the Eastern District of Virginia for breach of contract in three Counts. On April 23, 2010, Defendants filed a Counterclaim, alleging damages in various causes of action in ten Counts. Discovery followed, and with trial now pending, the Court now considers Plaintiff's Motion for Summary Judgment.

**A. Standard of Review**

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. A "material fact" is a fact that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 248. Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### III. ANALYSIS

The Court grants summary judgment in favor of ASCD for Counts I, II, and III of Plaintiff's Complaint, and Counts I, II, III, IV, V, VI, and VII of Defendants' Counterclaim. Each issue will be discussed below.

A.    ASCD's Claims

1.    Counts II and III (Breach of Contract)

The Court grants Plaintiff's motion for summary judgment for ASCD's Count II and III because (1) a valid contract existed, (2) Defendants failed to produce any evidence that the invoice charges are incorrect, or that Defendants prepaid any meals, travel expenses or hotel rooms, and (3) Plaintiff was damaged by Defendants' failure to pay.

The elements of a breach of contract action are "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage caused by the breach of that obligation." *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154 (2009). The plaintiff bears the burden of establishing damages with reasonable certainty. *Nichols Constr. Corp. v. Virginia Mach. Tool Co.*, 276 Va. 81, 89 (2008).

In this case, the Court concludes that (1) ASCD and Defendants have a legally enforceable obligation for both IP and UAEP; (2) Defendants breached the contracts by failing to pay; and (3) Plaintiff was damaged by the lack of payment. *See* Compl. ¶¶ 10, 11; Ans. ¶¶ 10, 11. The parties do not dispute (1) the existence of a contract, or (2) that Defendants ceased payment on the invoices. *Id.* The Court holds that Defendants failed to create a material issue of fact of damages by not producing any evidence controverting Plaintiff's claims. This issue will be discussed in turn.

a. Damages for the IP and UAEP Contracts

The Court grants Plaintiff's summary judgment motion because there is no material issue of fact as to the amount of damages. Here, (1) Plaintiff has established the amount of damages with reasonable certainty for IP and UAEP because it has

valid invoices, and (2) Defendants fail to establish a genuine, factual disagreement as to which terms they agreed to pay.

Plaintiff has established the material fact of damages because it has presented invoices for both projects. Pl. Ex. G-H. There is no issue of fact because Defendants have not presented any evidence disproving any of the charges.

In both oral argument and their briefing, Defendants could not identify any evidence establishing a dispute. Defendants presented three items allegedly creating a dispute: (1) an e-mail from Kathy Chao, ICERD's CFO, dated January 22, 2009 (Def. Ex. 16); (2) Defendants' request for itemized invoices (Def. Ex. 20); and (3) Defendants' negotiation of speaker honoraria (Def. Ex. 20).

The Court rejects all three of Defendants' proffers. The Court rejects Defendants' first argument because Chao's alleged electronic objection only states that ICERD thought the invoice "higher than my expectations" and that "[Defendants have] already paid for all the lodging and most of the food expenses." Def. Ex. 16. These two statements do not constitute formal objections; they are observations, and do not challenge the actual validity of the charges. Furthermore, Defendants have not presented any evidence establishing prepayment of lodging or food, thus failing to create a factual dispute.

The Court rejects Defendants' second argument because Defendants' request for itemized invoices does not challenge the validity of Plaintiff's invoices. The request for invoices, at best, is a clarification of the monies spent, not a live dispute as to the amount charged. Furthermore, Defendant Ghaly stated numerous times that he was paying the invoices in due course: (1) "[p]lease find attached [] a transfer of $100,000. . . . The remaining balance will be transferred shortly (Pl. Ex. P); (2) "[the invoices] are fine with the exception of [an irrelevant job description] and [the number of days paid for a worker that resigned] (Pl. Ex. R); and (3) "at any rate, I will start paying all of the invoices as soon as we get the 2ed[sic] payment and all of the payments will be covered in 60 days. . ." (Pl. Ex. U). Defendants' seeking of itemized invoice verification does not equate to an unequivocal dispute of the charged items.

Lastly, the Court rejects the Defendants' third argument because evidence of rate negotiation does not establish an issue of material fact. According to the record, the negotiated rate of $500 was charged in the final invoices. Pl. Ex. O. During oral argument, Defendants could not establish any part of the record that would support the proposition of overcharging, double-charging, or excessive billing.

The Court grants Plaintiff's summary judgment motion because the record establishes (1) Defendant Ghaly's constant

11

acquiescence to pay the invoices, (2) Defendants' requests for verification does not constitute a dispute, (3) Defendants' negotiation for a lower rate does not contradict or challenge Plaintiff's invoices, and (4) Defendants' failure to formally object to the invoices. For all the above reasons, the Court grants Plaintiff's motion.

## 2. Breach of Contract for the Promissory Note

The Court holds that there is no issue of material fact as to whether Defendants breached the promissory note (the "note") because Defendant failed to adhere to the note's terms. As established earlier, breach of contract requires (1) a valid contract, (2) material breach, and (3) damages. *Sunrise*, 277 Va. at 154.

In this case, all three elements are met after weighing the evidence in the light most favorable to the nonmovant. First, the parties executed a valid promissory note which gave Defendants $100,000 as working capital. Second, Defendants breached the agreement with Plaintiff by failing to repay the note. Defendants were required to pay the note in monthly installments of $8,333.33, plus interest, commencing March 31, 2009. Defendants neglected to pay the instrument from December 10, 2009, thus frustrating the note's purpose, which was to repay ASCD for the money it loaned Defendants for working capital. Lastly, Defendants damaged Plaintiff by denying it the

money that it was contractually obligated to pay. Accordingly, the Court holds that Defendants breached the note as a matter of law.

The Court rejects Defendants' argument that the Note has been paid in full for three reasons. First, while Defendants were entitled to prepay the note at any time, forcing Plaintiff to rearrange its accounting for the convenience of Defendants would frustrate the purposes of both the promissory note and the UAEP and IP contracts. Defendants' e-mails explain that Defendants paid $150,000 toward the outstanding balance of $208,450.70 for UAEP and IP, not towards the balance of the promissory note. *See* Compl.; Pl. Ex. H-J.

Second, the Court rejects Defendants' argument because Defendants conceded that the $150,000 paid towards the balance of the invoices was meant for the invoices, not for the promissory note. Defendants stated that the first payment of $100,000 was for "our outstanding balance" and not for the promissory note. *See* Pl. Ex. P. The term "outstanding balance," in context, does not refer to the note, but to the invoices. Further, ICERD made installment payments on the note beyond the date of the invoices, establishing that Defendants had not paid the note in full through the two lump payments. *See* Pl. Compl. ¶¶ 15-20.

Lastly, the Court rejects Defendants' argument because Defendants "officially requested that [Plaintiff] apply the sum of $100,000 paid by ICERD to fulfill the promissory note[.]" *See* Pl. Ex. V. An official request is not a contract; Plaintiff was under no obligation to heed Defendants' request to rearrange previous payments. If Defendants intended for the $150,000 to go towards the promissory note, they would have explicated with particularity which accounts to be paid. This "request" occurred over two months after Defendants paid money towards the IP and UAEP invoices, and does not constitute a binding contract.

For all of the above reasons, the Court grants summary judgment for Count I of Plaintiff's Complaint.

B. Counterclaimants' Claims

1. Count II: Defamation

The Court grants summary judgment in favor of ASCD against Counterclaimants' Count II Defamation Claim because the allegedly defamatory statements in the June 22, 2009 letter are nonactionable due to truth.

For a private individual to recover in a defamation action, the plaintiff may recover if the preponderance of the evidence establishes (1) the statement's falsity; (2) the defendant's knowledge of the falsity; and (3) either that the publisher (a) lacked reasonable grounds for belief of the falsity, or (b)

acted negligently in failing to ascertain the facts on which the publication was based. *Gazette, Inc v. Harris*, 229 Va. 1, 15 (1985). A court must consider the entire publication when determining libel; a single statement may not be read in isolation. *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 47-48 (2009).

In short, the elements of libel are (1) publication of (2) an actionable statement with (3) the requisite intent. Here, it is undisputed that Plaintiff's letters constitute publication. Furthermore, determination of intent is a question of fact to be determined by a jury. *Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, 135 (2003). Counterclaimants cannot establish the remaining element, actionability. This issue will be discussed in turn.

a. Actionability

The Court holds that Plaintiff's statements in the June 22, 2009 letter are not actionable because the preponderance of the evidence establishes that the statements (1) are true or ASCD's opinion of the situation and (2) not defamatory.

To be actionable, the statement must be both false and defamatory. *See M. Rosenberg & Sons v. Craft*, 182 Va. 512, 518 (1944). *See also Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). Statements that are true or can be proven false cannot support a defamation action. *Am. Commc'ns Network*,

*Inc. v. Williams,* 264 Va. 336, 337 (2002). Opinion statements
are generally not actionable because such statements cannot be
characterized as true or false. *Fuste v. Riverside Healthcare
Ass'n, Inc.,* 265 Va. 127, 132-33 (2003). Furthermore, a
defamatory statement must make the person appear odious,
infamous, or ridiculous; merely offensive or unpleasant
statements are not defamatory. *Chapin,* 993 F.2d at 1092. A
statement's actionability is a matter of law to be determined by
the court. *Chaves v. Johnson,* 230 Va. 112, 119 (1985).

The Court holds that Plaintiff's statements in the June 22,
2009 letter are not actionable because the statements (1) are
true, and (2) are not defamatory. In the June 22, 2009 letter,
ASCD writes:

> In reviewing the current project[,] we felt it
> important to provide you with additional context and
> information regarding the change in relationship
> between Dr. Joseph Ghaly/ICERD and ASCD. As you may
> be aware, ASCD contracted Dr. Joseph Ghaly to manage
> ASCD activities in the Middle East, and coordinate our
> organization's support in the region under the name
> ASCD Middle East. Several weeks ago, ASCD provided
> Dr. Ghaly with notice of our intent to end his
> contract following the conclusion of the current phase
> of the "Teachers for the 21st Century" project. This
> decision was made after careful consideration
> following concerted efforts by ASCD to improve
> communications, coordination, and local operational
> management provided by Dr. Ghaly. Subsequent thereto,
> Dr. Ghaly chose to immediately sever collaboration and
> coordination with ASCD by ending communications,
> halting payments for services and content, and
> blocking ASCD's involvement in the remaining stages of
> the project. We plan to provide project deliverables
> and support we committed to provide, however are

> currently unable to do so.  We fear that the project
> may not conclude as planned.

Pl. Ex. AA.  Defendants contend that Plaintiff wrote that it had

terminated Ghaly, and not ICERD; the actual letter explains that

ASCD terminated Ghaly's contract, which is a true statement.

*See* Pl. Ex. AA.  Furthermore, Defendant Ghaly had explained that

Ghaly and ICERD were the same entity, furthering the truth of

ASCD's statements.  *See* Pl. Ex. F ¶ 23, Pl. Ex. Q ¶ 16, Pl. Ex.

AC ¶¶ 7, 20.  Defendants halted payment for services and

content, as established by their failure to make payments on the

promissory note.[1]  *See supra*, § III.A.2.  Defendants stopped

collaborating and coordinating with ASCD and blocked ASCD's

further involvement.  *See* Pl. Exs. F, Q, AC.  Plaintiff was

unable to provide project deliverables, given the issues of

payment.  *Id.*  Accordingly, the June 22, 2009 letter is not

actionable because it cannot be proved false.

Additionally, the statements are not actionable because the

statements are not defamatory.  The statements do not make

Defendants appear odious, infamous, or ridiculous; the

statements may appear to be unpleasant or offensive because they

are restatements of truth.  The letter at issue is a factual

restatement of the happenings surrounding the events of this

---

[1] The issues of payment can also be considered statements of
opinion.  Plaintiff applied Defendants' payments to the
outstanding invoices, and Plaintiff opined that both the
promissory note and invoices were outstanding and unpaid.  *See
generally* Compl. (Dkt. No. 1.)

17

action, and are supported by the record. *See* Pl. Exs. F, Q, AA, AB, AC.

The Court rejects Counterclaimants' argument that the statements can be proven false because Counterclaimants have failed to establish the falsity of any of the letter's words. Counterclaimants do not cite to any part of the record which would negate the validity of any points stated in the letter. Accordingly, the Court concludes that the letter is not actionable because the contents of the June 22, 2009 letter are true, which bars Counterclaimants' defamation claim.

b.  Qualified Privilege

The Court holds that the allegedly defamatory letter is subject to a qualified privilege because of its context in an employment relationship. In employment situations, the allegedly defamatory statement enjoys a qualified privilege because the statement is made between persons on a subject in which the persons have a mutual interest. *Union of Needletrades v. Jones*, 268 Va. 512, 519-20 (2004). The question of privilege is a matter of law for the Court to decide. *Fuste*, 265 Va. at 135.

Here, the June 22, 2009 letter was made between persons on a subject of mutual interest, the development of the country's educational system. ASCD and the United Arab Emirates Ministry of Education ("MoE") had a shared interest in working together

on educational matters, as established by the two earlier
letters of May 18, 2009 and June 12, 2009. As Counterclaimants
had been also working with the MoE and ASCD, the relationship
between ASCD and ICERD/Ghaly was also of mutual interest, and
ASCD had an interest in clarifying the status of the
relationship for future business purposes. Accordingly, this
Court holds that the June 22, 2009 letter is subject to a
qualified privilege as a matter of law.

c.  The Exact Words Spoken or Written Need to be Alleged

Alternatively, the Court grants summary judgment because
the exact defamatory words were not alleged with specificity.
"Good pleading requires that the exact words spoken or written
must be set out in the declaration . . ." *Fuste*, 265 Va. at
137. Here, Defendants only broadly describe the statements that
were alleged in the letter, failing to recite the exact words
that they allege to constitute defamation. Accordingly, the
Court grants summary judgment because Defendants fail to meet
the requirements of a defamation action.

For all of the above reasons, the Court grants summary
judgment in favor of ASCD for Counterclaimants' Count II
Defamation Claim.

2.  Count I: Tortious Interference with Contract Regarding MoE

The Court grants summary judgment against Counterclaimants'
Count I tortious interference with contract claim because (1)

the interference was neither illegal nor independently tortious,
and (2) Plaintiff's statements in the June 22, 2009 letter are
privileged.  Each issue will be discussed in turn.

a.  Legal and Nontortious Interference

    The Court holds that ASCD's alleged interference was
neither illegal nor independently tortious.  Under Virginia law,
the elements of a cause of action for tortious interference with
contract are (1) the existence of a valid contractual
relationship or business expectancy; (2) knowledge of the
relationship or expectancy on the part of the interferor; (3)
intentional interference inducing or causing the breach or
termination of the relationship or expectancy; and (4) resultant
damage to the party whose relationship or expectancy has been
disrupted.  *Century-21 v. Elder*, 239 Va. 637, 641 (1990).

    The third element of this claim, intentional interference,
has four sub-elements: (1) intent, (2) interference, (3) breach
or termination, and (4) causation.  *Boy Blue Inc. v. Zomba
Recording LLC*, 3:09cv483, 2009 WL 2970794, at *1 (E.D. Va. Sept.
16, 2009).  Methods of interference considered improper are
those means that are illegal or independently tortious, such as
violations of statutes, regulations, or recognized common-law
rules.  *Duggin v. Adams,* 234 Va. 221, 227-28 (1985).  Conduct is
tortious if an interferor induces a third-party to breach an

existing contract that cannot be terminated at will. *Id.* at
121-22.

As established previously, Counterclaimants fail to
establish an independently tortious ground for the tortious
interference with contract claim. The only tortious ground for
this interference is defamation, and defamation cannot be
established. *See supra* § III.B.1. Hence, Counterclaimants fail
to bring a valid claim for tortious interference with contract
because there is no underlying tort.

b. Justification and Privilege

Furthermore, the Court holds that ASCD has established that
the June 22, 2009 letter was justified and privileged. The
burden rests upon the defendant to prove justification or
privilege, which are similar to the defense of qualified
privilege in the law of defamation. *Chaves v. Johnson,* 230 Va.
112, 121 (1985). *See supra* III.B.1.b. Specific grounds for the
defense are legitimate business competition, financial interest,
responsibility for the welfare of another, directing business
policy, and the giving of requested advice. *Chaves,* 230 Va. at
121.

In this case, ASCD meets its burden for justification and
privilege. The Court concludes that the June 22, 2009 letter
(1) is for legitimate business competition, (2) is in ASCD's
financial interest, and (3) directs business policy. The letter

is for legitimate business competition because it "affirm[s] ASCD's commitment in collaborating with the Ministry of Education in the successful completion of the 'Teachers for the 21st Century Project.'" Pl. Ex. AA. The letter is in ASCD's financial interest because ASCD is soliciting business, as exhibited by ASCD welcoming "the opportunity to work directly with the Ministry and Zayed University in any future initiatives." *Id.* Lastly, the letter directs business policy because Plaintiff writes "to discuss opportunities for further collaboration. . ." *Id.*

The Court concludes that the letter is justified and privileged as a matter of law because it is for legitimate competition, in ASCD's financial interest, and directs ASCD's business policy.

For all of the above reasons, the Court grants ASCD's motion for summary judgment in regard to Counterclaimants' Count I.

### 3. Count VI: Tortious Interference with Contract Regarding MAIS

The Court grants summary judgment on Counterclaimants' Count VI Tortious Interference with Contract Claim because there is no genuine issue of fact as to existence of any contracts.

Under Virginia law, the elements of a cause of action for tortious interference with contract are (1) the existence of a valid contractual relationship or business expectancy; (2)

knowledge of the relationship or expectancy on the part of the
interferor; (3) intentional interference inducing or causing the
breach or termination of the relationship or expectancy; and (4)
resultant damage to the party whose relationship or expectancy
has been disrupted. *Century-21*, 239 Va. at 641.

In this case, there is no issue of fact as to the
Counterclaimants' resultant damages after assuming the existence
of the first three elements. Counterclaimants have failed to
designate any material, probative facts showing ASCD's
intentional interference with unspecified contracts; they have
not produced the cancelled contracts that were the result of Mr.
Moggey's alleged interference. Without such contracts,
Counterclaimants may not recover. Furthermore, Counterclaimants
suffered no damages because they (1) did not hire teachers,
staff, or a principal for the year at issue; (2) had not
attempted to balance the anticipated budget; and (3) had no
building facilities and no operating fund for the school year.
*See* Pl. Ex. B. Accordingly, the Court grants ASCD's motion for
summary judgment because Counterclaimants' Count VI fails as a
matter of law, as Counterclaimants cannot prove any resultant
damage, which is required for this claim.

4. Count III: Breach of Contract

The Court grants summary judgment in regard to
Counterclaimants' Count III because the contract language

23

precludes recovery.  Virginia adheres to the "plain meaning"
rule, and the Court gives full effect to all contractual
language if it can be read in conjunction without conflict.
*Berry v. Klinger,* 225 Va. 201, 208 (1983).  Thus, "meaning must
be given to every clause. The contract must be read as a single
document." *Id.*  "When determining a contract's plain meaning,
the words used are given their usual, ordinary, and popular
meaning." *Pocahontas Mining Ltd. Liab. Co. v. Jewell Ridge Coal
Corp.,* 263 Va. 169, 173 (2002).  It is the duty of the Court to
interpret a clear and unambiguous contract.  *Winn v. Aleda
Constr. Co.,* 277 Va. 304, 307 (1984).

In this case, the contract precludes recovery because the
contract language forbids recovery for lost revenue and profits.
The contract states:

> [Except for sections not relevant to this matter,]
> UNDER NO CIRCUMSTANCES WILL THE PARTIES HAVE ANY
> OBLIGATION OR LIABILITY TO THE OTHER FOR ANY
> INCIDENTAL, INDIRECT, CONSEQUENTIAL OR SPECIAL DAMAGES
> INCURRED BY THE OTHER PARTY (INCLUDING DAMAGES FOR
> LOST BUSINESS, LOST PROFITS OR DAMAGES TO BUSINESS
> REPUTATION), REGARDLESS OF HOW SUCH DAMAGES ARISE AND
> REGARDLESS OF WHETHER OR NOT A PARTY WAS ADVISED SUCH
> DAMAGES MIGHT ARISE.  THE FOREGOING LIMITATIONS SHALL
> APPLY NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE
> OF ANY LIMITED REMEDY.

Pl. Ex. A.  Counterclaimants seek damages for "lost revenue" and
for "lost profits," which the contract prohibits regardless of
how such damages might arise.  Def. Countercl. ¶ 50.
Accordingly, the Court will not frustrate the contract's purpose

when the plain meaning of the contract provides otherwise.
Hence, the Court grants summary judgment as a matter of law in
regard to Counterclaimants' Count III because of the contract's
express language.

4. Count IV: Breach of Contract

The Court grants summary judgment in regard to
Counterclaimants' Count IV because the contract language
precludes recovery for lost profits. As mentioned previously,
Virginia adheres to the "plain meaning" rule, gives meaning to
every clause, and words are given their usual, ordinary, and
popular meaning. *Berry,* 225 Va. at 208. It is the Court's duty
to interpret clear, unambiguous contracts. *Winn*, 277 Va. at
307.

In this case, the contract precludes recovery because the
contract language forbids recovery for lost revenue and lost
profits. The contract states:

> [Except for sections not relevant to this matter,]
> UNDER NO CIRCUMSTANCES WILL THE PARTIES HAVE ANY
> OBLIGATION OR LIABILITY TO THE OTHER FOR ANY
> INCIDENTAL, INDIRECT, CONSEQUENTIAL OR SPECIAL DAMAGES
> INCURRED BY THE OTHER PARTY (INCLUDING DAMAGES FOR
> LOST BUSINESS, LOST PROFITS OR DAMAGES TO BUSINESS
> REPUTATION), REGARDLESS OF HOW SUCH DAMAGES ARISE AND
> REGARDLESS OF WHETHER OR NOT A PARTY WAS ADVISED SUCH
> DAMAGES MIGHT ARISE. THE FOREGOING LIMITATIONS SHALL
> APPLY NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE
> OF ANY LIMITED REMEDY.

Pl. Ex. A. Counterclaimants seek damages for "lost revenue" and
for "lost profits," which the contract prohibits regardless of

how such damages might arise. Def. Countercl. ¶ 52.

Accordingly, the Court will not frustrate the contract's purpose when the plain meaning of the contract provides otherwise. Hence, the Court grants summary judgment as a matter of law in regard to Counterclaimants' Count IV because of the contract's express language.

5. <u>Count V: Breach of Non-Solicitation Restrictive Covenant</u>

The Court grants summary judgment against Counterclaimants' Count V because ASCD did not breach the contract as a result of its pre-existing relationship with Mr. Roussin. As mentioned previously, Virginia adheres to the "plain meaning" rule, gives meaning to every clause, and words are given their usual, ordinary, and popular meaning. *Berry,* 225 Va. at 208. It is the Court's duty to interpret a clear, unambiguous contract. *Winn*, 277 Va. at 307.

According to the contract, "the Parties shall not knowingly solicit for employment or employ . . . any individual who was employed by the other Party . . . with whom the employing Party became acquainted as a result of this agreement." Pl. Ex. A, ¶ 13. It is undisputed that Mr. Roussin was a member of ASCD prior to entering into the Affiliation Agreement with ICERD in November 2007. *See* Pl. Ex. Q, ¶ 21; Def. Opp'n 26. Hence, ASCD did not become acquainted with Mr. Roussin as a result of the agreement, and is not in breach of this contract provision.

Accordingly, the Court grants summary judgment against Counterclaimants' Count V because ASCD did not breach the contract as a matter of law.

## 6. Count VII: Virginia Statutory Business Conspiracy

The Court grants summary judgment against Counterclaimants' Count VII civil conspiracy claim because Counterclaimants failed to establish an agreement between Zayed University and ASCD to tortiously interfere with Counterclaimants' contracts.

A Virginia statutory business conspiracy is composed of two or more persons who "combine, associate, agree, mutually undertake or concert together for the purpose of . . . willfully and maliciously injuring another in his reputation, trade, business or profession." Va. Code Ann. § 18.2-499 (West 2010). Section 18.2-500 provides civil relief to individuals or entities who are injured by such a business conspiracy. *Id.* § 18.2-500; *see DAG Petroleum Suppliers L.L.C. v. B.P. P.L.C.*, 452 F. Supp. 2d 641, 649-50 (E.D. Va. 2006).

To prevail on its conspiracy claim, Counterclaimant must prove by clear and convincing evidence (1) ASCD and Zayed University ("Zayed") entered into an agreement, and (2) this agreement was for the purpose of willfully and maliciously injuring Counterclaimants. Counterclaimants fail to provide evidence for either element; they claim that the words of three electronic messages establish both agreement and malice. The e-

mails establish only that ASCD and Zayed thought about collaborating on a potential project, and to claim otherwise is a giant leap. The three allegedly incendiary statements—(1) "whether a meeting with Zayed and Ministry officials would be possible for June" (Def. Ex. 47); (2) an alleged "back door of information" (Def. Ex. 49); and (3) "this might be direction to go," with a reply of "I have the letter for the new minister on Monday" (Def. Ex. 50)—fail to establish malice or agreement between the two alleged conspirators. Counterclaimants failed to provide any evidence proving (1) ASCD and Zayed came to any agreement; (2) ASCD and Zayed intended to injure Counterclaimants; or (3) an alleged agreement was struck to willfully or maliciously injure ACERD and Ghaly. Accordingly, the Court must grant summary judgment against Count VII as a matter of law.

## IV. CONCLUSION

The Court grants summary judgment in favor of Plaintiff ASCD on all Counts. The Court grants summary judgment for ASCD's Count I because (1) there was a promissory note, (2) Defendants breached the note by failing to pay it, and (3) Plaintiff was damaged by Defendants' action. The Court grants Plaintiff's motion for summary judgment for ASCD's Counts II and III because (1) a valid contract existed, (2) Defendants failed to produce any evidence that the invoice charges are incorrect,

or that Defendants prepaid any meals, travel expenses or hotel rooms, and (3) Plaintiff was damaged by Defendants' failure to pay.

The Court grants ASCD's Motions for Summary Judgment against Counterclaimants. The Court grants summary judgment against Counterclaimants' Count II defamation claim because the allegedly defamatory statements were not false. The Court grants summary judgment against Counterclaimants' Count I tortious interference with contract claim because Counterclaimants cannot establish the independent tort required to interfere with the contract. The Court grants summary judgment on Counterclaimants' Count VI tortious interference with contract claim because Counterclaimants cannot prove that they were damaged by the allegedly tortious action. The Court grants summary judgment against Counterclaimants' Counts III and IV because the parties' express agreement prohibits recovery of damages for lost profits. The Court grants summary judgment against Counterclaimants' Count V because ASCD already had a pre-existing relationship with the party at issue. The Court grants summary judgment against Counterclaimants' Count VII civil conspiracy claim because Counterclaimants failed to establish an agreement between Zayed University and ASCD to tortiously interfere with Counterclaimants' contracts.

For all of the above reasons, it is hereby

ORDERED that ASCD's Motion for Summary Judgment for Counts I, II, and III of ASCD's Complaint is GRANTED. It is further

ORDERED that ASCD's Motion for Summary Judgment for Counts I, II, III, IV, V, VI, and VII of Counterclaimants' Complaint is GRANTED. It is further

ORDERED that Defendants' Motion in Limine (Dkt. No. 149) is DENIED AS MOOT. It is further

ORDERED that Plaintiff's Motion in Limine (Dkt. No. 152) is DENIED AS MOOT.

The Clerk is directed to enter a separate judgment pursuant to Federal Rule of Civil Procedure 58 in favor of Plaintiff Association for Supervision and Curriculum Development, Inc. ("ASCD") against Defendants International Council for Education Reform and Development, Inc. ("ICERD") and Dr. Joseph Ghaly for (1) $84,398.28 in principal and interest due as of December 10, 2009, plus $8,333.33 with monthly interest of $46.25 on January 10, 2010, plus the additional principal and interest due at the date of judgment, plus interest on the judgment amount and costs

as provided in Count I of Plaintiff's Complaint; (2) $75,075.27,

plus interest from 30 days from January 21, 2009 at the judgment

rate until paid, plus costs as provided in Count II of

Plaintiff's Complaint; and (3) $58,502.79, plus interest at the

judgment rate from February 21, 2009 through March 25, 2009 on

$208,458.70 plus interest at the judgment rate from March 26,

2009 through April 21, 2009 on $108,458.70, plus interest at the

judgment rate from April 22, 2009 until paid on $58.502.79, plus

costs, pursuant to Federal Rule of Civil Procedure 58.  The

Clerk is further directed to forward a copy of this Order to

counsel of record.


        ENTERED this 14th day of March, 2011.


Alexandria, Virginia

                                    /s/
                            _____
                            Gerald Bruce Lee
                            United States District Judge

/s/
_____
Gerald Bruce Lee
United States District Judge